UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No.    23-30045 |
| ACJK, Inc., | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| ACJK, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No.    23-03026 |
| | ) | |
| SMALL BUSINESS FINANCIAL | ) | |
| SOLUTIONS, LLC, and | ) | |
| RAPID FINANCIAL SERVICES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## O P I N I O N

Before the Court is the Defendants' Motion to Dismiss the Plaintiff's Second Amended Complaint. For the reasons set forth herein, the Motion to Dismiss will be granted, in part, and denied, in part. Counts II and IV will be dismissed as to Small Business Financial Solutions, LLC, and Counts II, III, IV, and V will be dismissed as to Rapid Financial Services, LLC. The dismissals will be without prejudice and with leave to replead.

## I.    Factual Background

ACJK, Inc. ("Debtor"), a corporation that operated a pharmacy in Granite City, Illinois, commenced its voluntary Chapter 11 case on January 30, 2023, by filing a bare-bones petition. The Debtor's schedules and other required

documents were filed a month later. On Schedule D: Creditors Who Have Claims Secured by Property, the Debtor listed Rapid Finance ("Rapid") as being owed $59,140.18 secured—along with debts of several other creditors—by the pharmacy's inventory valued at $238,000. The debt was marked by the Debtor as being "disputed." The Debtor also listed "Rapid Finance/Prosperum c/o Howard Townsell," "Rapid Financial Services, LLC d/b/a Rapid Finance," and "Rapid Financial Services, LLC d/b/a Small Business Financial Solutions, LLC" as entities related to Rapid and entitled to notice. Small Business Financial Solutions, LLC ("SBFS") was not scheduled as a creditor but nevertheless filed a proof of claim on April 10, 2023, for unsecured debt in the amount of $56,723.05. Rapid was not mentioned in the proof of claim filed by SBFS and never filed its own proof of claim.

The Debtor's Second Amended Chapter 11 Plan was confirmed on March 5, 2024. The plan defined "Rapid Finance" as "Rapid Financial Services, LLC d/b/a/ Rapid Finance and Small Business Financial Solutions, LLC." The plan provided that the value of the Debtor's assets was insufficient to fully secure the claims of creditors it asserted were superior to Rapid Finance's claim. Thus, the plan further provided that the claim of Rapid Finance would be treated as unsecured. No specific reference to the claim filed by SBFS was included in the plan.

 A few weeks later, the Debtor filed an objection to the proof of claim filed by "Small Business Financial Solutions, LLC d/b/a Rapid Financial Services, LLC . . . in the amount of $56,723.05 as an unsecured claim." SBFS, in turn,

filed an amended claim for the same amount, unsecured, and again did not mention Rapid. The Debtor then objected to the amended claim.

On November 15, 2023, the Debtor commenced this adversary proceeding against SBFS and Rapid based on a dispute over an alleged amendment to the Debtor's loan agreement with SBFS and a separate, ill-fated agreement with third-party Walgreens for the sale of the Debtor's business and assets. The Debtor contends that the Defendants are responsible for the collapse of the Walgreens deal. The Defendants jointly answered the original complaint, together acknowledging the business relationship with the Debtor and admitting, among other things, that they had entered into an amended agreement that was binding and enforceable as to each of them and the Debtor. The Defendants, however, denied the substantive allegations about the terms of the amended agreement and denied that they were liable to the Debtor. They raised several affirmative defenses, including failure to state a claim upon which relief can be granted. The Debtor thereafter twice sought leave to amend the complaint to elaborate on the details of its agreement with Walgreens and to develop its claim of damages, culminating in the Second Amended Complaint that the Defendants now seek to dismiss.

The Second Amended Complaint alleges that, in May 2022, the Debtor entered into a loan agreement with SBFS under which SBFS extended $100,000 to the Debtor in exchange for a security interest in the Debtor's inventory and other collateral, as well as the Debtor's agreement to make regular installment payments to SBFS until the loan was repaid. SBFS filed a

UCC-1 financing statement to perfect its lien on the collateral. In December 2022, the Debtor entered into a purchase and sale agreement with Walgreens for the Debtor's customer base and inventory in exchange for $1,272,800, the majority of which would be paid at closing and the remainder within one year of the sale if certain contingencies occurred. Closing of the sale was itself contingent on the release of any liens on the Debtor's assets that were subject to the sale agreement. Because SBFS had a perfected lien on assets subject to sale, the Debtor sought to renegotiate the loan agreement and obtain a release of the related lien.

The Debtor alleges that Rapid is an affiliate and representative of SBFS, authorized to act on its behalf, and that, on January 17, 2023, the Debtor, SBFS, and Rapid entered into an agreement to restructure the Debtor's repayment of the existing loan debt to SBFS. According to the Debtor, SBFS and Rapid agreed to release the UCC lien on the Debtor's property upon receipt of the first of four monthly installment payments of $15,754.78. Attached to the Second Amended Complaint is a copy of the purported agreement, consisting of a letter signed by a representative of Rapid and addressed to the Debtor's principal stating that "we" agree to settle "your" account for four monthly payments of $15,574.78 beginning January 17, 2023. The letter goes on to emphasize that "[t]he funds are due in our office no later than January 17, 2023[,]" and states that "when your wire is received and clears the account, we will release the UCC-1 filing[.]" The letter also directs that payment be made to SBFS, providing the address and account information for the payment.

According to the Debtor, SBFS and Rapid were aware of the Walgreens deal and the circumstances under which the Debtor sought a release of SBFS's lien. Nevertheless, when the Debtor made the first $15,574.78 payment to SBFS under the amended agreement, the Defendants apparently refused to release the UCC lien in breach of their agreement. Attached to the Second Amended Complaint is a copy of an email exchange between representatives of the Debtor, Rapid, and Walgreens regarding the lien release wherein Rapid stated that it required full payment of the debt before it would release the lien. As a result of the Defendants' refusal to release the lien, the Debtor alleges that Walgreens deal fell apart. Without the sale proceeds to pay off its creditors, the Debtor filed its bankruptcy two weeks later.

The Second Amended Complaint consists of five counts against both Defendants: breach of contract (Count I), promissory estoppel (Count II), preferential transfer under §547 (Count III), constructively fraudulent transfer under §548 (Count IV), and equitable subordination under §510 (Count V). Specifically, Count I alleges that the Debtor and Defendants entered into a binding, enforceable agreement to release the UCC lien in exchange for payment of the first of four installments of $15,754.78, that the Defendants breached the agreement by failing and refusing to release the lien after the Debtor satisfied its payment obligation and despite knowing that the Walgreens deal depended on the lien release, and that the Walgreens deal in fact fell apart as a result. The Debtor alleges that it had an expectancy interest in sale proceeds from Walgreens that it did not receive as a direct and proximate result

of the Defendants' breach, and that, after deducting amounts realized from the sale of property in bankruptcy, it was damaged in an amount not less than $1,190,300 for which the Defendants are liable. Count II alleges that the Defendants are liable under the same circumstances and for the same amounts under a promissory estoppel theory based on their promise to release the UCC lien in exchange for $15,574.78, the Debtor's detrimental reliance on that promise in making the payment which was reasonable and foreseeable, and the collapse of the Walgreens deal caused by the Defendants' failure to keep their promise.

Count III alleges that all payments made by the Debtor to the Defendants under the original and amended agreements within the 90 days preceding bankruptcy—namely the $15,574.78 made under the amended agreement, as well as 11 weekly payments of $1662.34 under the original agreement—are avoidable preferential transfers under §547. Count III seeks to hold the Defendants liable for damages in an amount not less than $34,040.52. Count IV similarly alleges that the $15,574.78 prepetition payment under the amended agreement is avoidable as a constructively fraudulent transfer under §548 and seeks damages from both Defendants in at least that amount. Count V alleges that the Defendants' conduct in knowingly breaching their agreement with the Debtor was inequitable such that it warrants subordination of their claims or interests to the claims and interests of all other creditors or holders of such interests.

In response, the Defendants filed their Motion to Dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), applicable here through Bankruptcy Rule 7012(b), for failure to state a claim upon which relief can be granted.[1] The Motion to Dismiss asserts that all counts should be dismissed as to Rapid because the allegations of the Second Amended Complaint only support a finding that Rapid is an agent of SBFS; Rapid was not a party to the original contract between the Debtor and SBFS, Rapid did not file and therefore had no authority to release the UCC lien, Rapid was not the recipient of the transfers at issue, and Rapid did not file a proof of claim in the Debtor's bankruptcy case. The Motion to Dismiss also makes several additional arguments for the dismissal of each count.

As to Count I, the Defendants contend that the allegations of the Second Amended Complaint are contradicted by the documentary exhibits attached to it and that the Debtor's interpretation of the parties' agreement is simply not plausible. As to Count II, the Defendants similarly argue that the Second Amended Complaint fails to plausibly allege an unambiguous promise or that the Debtor reasonably relied on any such promise when viewed in context with all surrounding circumstances. The Motion to Dismiss also attacks the claim for damages under Count II, asserting that the Defendants, as a matter of law, cannot be liable for the lost proceeds from the unrealized Walgreens sale and

---

[1] The Defendants also filed a Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's Second Amended Complaint. For purposes of this Opinion, the Defendants' Motion to Dismiss and the supporting memorandum are treated as one and the same and may be referred to simply as the Motion to Dismiss.

that the Debtor received a dollar-for-dollar credit against its loan balance for the payments made.

The Defendants argue that Counts III and IV also fail as a matter of law. The Motion to Dismiss contends that SBFS is not vulnerable to a preference action as a fully secured creditor based on the Debtor's assertion that the anticipated proceeds from the Walgreens deal would have been enough to pay off all secured creditors. And because the Debtor was given a dollar-for-dollar credit against its outstanding loan balance, it received equivalent value for the $15,574.78 payment that therefore cannot be avoided as a constructively fraudulent transfer. As to Count V, the Motion to Dismiss argues that, because equitable subordination is a highly subjective legal issue that courts are particularly hesitant to invoke as a remedy other than in cases involving fiduciary or insider misconduct, the Debtor has a high burden even at the pleading stage that it failed to meet.

The Debtor filed a response to the Motion to Dismiss addressing each of the Defendants' arguments. In response to the argument that the Second Amended Complaint does not plausibly allege that Rapid was anything but a mere agent for SBFS, the Debtor notes that the Defendants had admitted in their answer to the original complaint that they both were parties to the amended agreement. As for the Defendants' other arguments, the Debtor largely contends that the attacks merely raise questions of fact that are properly resolved in the Debtor's favor at the pleading stage.

In addition to the filed documents, the Court heard oral arguments from each party at a hearing held July 11, 2024. Having reviewed and considered those arguments along with the entire case record, the Court is ready to decide the matter.

## II.   Jurisdiction

This Court has jurisdiction over proceedings "arising under title 11, or arising in or related to cases under title 11" pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Southern District of Illinois have been referred to the bankruptcy judges. SDIL-LR Br1001.1; *see* 28 U.S.C. §157(a). Matters concerning the administration of the estate, counterclaims by the estate against persons filing claims against the estate, proceedings to determine, avoid or recover preferences or fraudulent transfers, and determinations of the validity, extent or priority of liens are core proceedings. 28 U.S.C. §157(b)(2)(A), (C), (F), (H), (K).

Because actions for breach of contract, promissory estoppel, and to recover fraudulent conveyances do not arise exclusively under the Bankruptcy Code and do not strictly arise in a bankruptcy case—the same causes of action often could be prosecuted under state law in a state court—this Court is exercising "related to" jurisdiction in this proceeding, raising the question of whether there is a constitutional impediment to the entry of a final judgment. *Exec. Benefits Ins. Agency v. Arkinson*, 573 U.S. 25, 37-38 (2014); *Stern v. Marshall*, 564 U.S. 462, 493 (2011); *see* 28 U.S.C. §157(c). Impediments to the

entry of a final judgment may be overcome by the knowing and voluntary consent of the parties to final adjudication by a bankruptcy judge. *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 669 (2015). Consent may be implied, requiring only that "the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case" before the bankruptcy judge. *Jordan v. Pritchard (In re Pritchard)*, 633 B.R. 314, 325 (Bankr. E.D. Tenn. 2021) (quoting *Roell v. Withrow*, 538 U.S. 580, 590 (2003)).

Here, the Debtor's Second Amended Complaint contains a generic statement that "[v]enue and jurisdiction are proper in this Court" because the "matter arises under Title 11 or is a core proceeding under Title 11[.]" The allegation does not contemplate that one or more of the causes of action asserted might be non-core or merely "related to" the bankruptcy and likewise does not affirmatively state that the Debtor consents to the entry of a final judgment by this Court. A similar allegation was set forth in the original complaint, which the Defendants answered admitting that venue and jurisdiction were proper. The Motion to Dismiss the Second Amended Complaint now before the Court, however, does not respond to the Debtor's venue allegation.

The parties' conduct in pursuing and defending against the present proceeding without contesting this Court's exercise of jurisdiction over the issues presented leads the Court to believe that they consent to the entry of final orders. There is little question that the Debtor, in commencing this

adversary proceeding and seeking relief from the bankruptcy court, consents to this Court's jurisdiction. "Silence does not imply consent, but affirmatively invoking the bankruptcy court's jurisdiction most assuredly supplies whatever consent is necessary." *Horwitz v. Alloy Auto. Co.*, 992 F.2d 100, 103 (7th Cir. 1993) (citations omitted). The Defendants asking the Court to dismiss the Second Amended Complaint, however, does not necessarily mean that they consent to this Court entering final judgment. In answering the remaining claims of the Second Amended Complaint or a third amended complaint if filed, the Defendants should therefore expressly state whether they consent to entry of final orders or judgment by this Court pursuant to Bankruptcy Rule 7012(b). But to be sure, should the Defendants continue to litigate the matter without objection, having now been informed of the issue, their silence may be construed as implicit consent.

That said, resolving the Defendants' Motion to Dismiss does not depend on the parties' consent to entry of final orders by the Court. Section 157(c)(1) expressly authorizes bankruptcy courts to hear non-core but related proceedings and limits only the court's ability to enter final orders or judgment. 28 U.S.C. §157(c)(1). And a ruling on a motion to dismiss "that adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties" is not a final order "unless the court expressly determines that there is no just reason for delay" of entry of final judgment under Federal Rule of Civil Procedure 54(b). *Settlers' Hous. Serv., Inc. v. Bank of Schaumburg (In re Settlers' Hous. Serv., Inc.),* 520 B.R. 253, 259 (Bankr. N.D. Ill. 2014); *Car-Go Parts Ctr. of*

*Ill., Inc. v. Fed. Mogul Corp.*, 180 B.R. 507, 508-09 (N.D. Ill. 1995). Because the Defendants' Motion to Dismiss will be granted only in part and with leave to replead, the order to be entered here will not be a final order for which consent of the parties is required. Fed. R. Civ. P. 54(b); Fed. R. Bankr. P. 7054.

### III.   Legal Analysis

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, a complaint need only allege enough factual allegations to plausibly suggest a claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012. That is, a complaint must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 555); *see also* Fed. R. Civ. P. 8(a); Fed. R. Bankr. P. 7008. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). *Twombly* "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). While detailed specifics may not be required, there must be some facts alleged to support each element of the cause of action. *Iqbal*, 556 U.S. at 678-79; *see also Olson v. Champaign Cty.*, 784 F.3d 1093, 1098-99 (7th Cir. 2015).

"A claim has facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). When ruling on a motion to dismiss, a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *Iqbal*, 556 U.S. at 678; *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012). Those well-pleaded facts, however, must "permit the court to infer more than the mere possibility of misconduct[.]" *Iqbal,* 556 U.S. at 679.

### A. Count I

Count I is based on breach of contract governed by applicable state law. In their Motion to Dismiss, the Defendants assert that, because the original contract between the Debtor and SBFS included a choice-of-law provision identifying Maryland state law as controlling disputes between those parties, Maryland law applies to the amended agreement upon which the breach of contract claim is based. Although the Debtor, in responding to the Motion to Dismiss, does not dispute the Defendants' assertion about the law that should be applied, it is not entirely clear that Maryland law should apply to Rapid who is not alleged to have been a party to the original contract containing the choice-of-law provision. But it is not critical that the question be resolved at this stage because the elements of a breach of contract claim are largely the same under Maryland and Illinois law. Essentially, a breach of contract claim

requires allegations of (1) a contract and obligation, (2) breach by the defendant, and (3) resulting damages to the plaintiff. *Compare Sevugan v. Direct Energy Servs., LLC,* 931 F.3d 610, 614 (7th Cir. 2019), *with Kantsevoy v. LumenR, LLC,* 301 F. Supp. 3d 577, 596 (D. Md. 2018).

Here, the Second Amended Complaint alleges that the parties entered into an amended agreement providing for the release of the UCC lien filed by SBFS in accordance with the original loan agreement in exchange for the first of four accelerated installment payments for a reduced total in settlement of the existing debt owed by the Debtor. The Second Amended Complaint also alleges that the Debtor performed its obligation to pay the first installment and that the Defendants breached their obligation triggered by the payment when they failed or refused to release the lien upon receipt. Finally, the Second Amended Complaint alleges that the Defendants' breach damaged the Debtor in that it caused the Debtor's separate agreement with Walgreens for the sale of the Debtor's business assets to fail.

### 1.  *Count I will survive as to SBFS.*

The Motion to Dismiss challenges the plausibility of the allegations for breach of contract by arguing that the Debtor's interpretation of the agreement is contradicted by the documents attached to the complaint and inconceivable in the context of the circumstances alleged. At their core, the attacks merely represent one side's subjective version of facts that are clearly in dispute. The emails that the Debtor says show the Defendants' breach are the very same

that the Defendants say clarify the terms of the amended agreement. The purported agreement, although not entirely clear, could reasonably be construed in a manner consistent with the Debtor's interpretation. That the Defendants may have sent an email clarifying their interpretation of the agreement after the Debtor had paid the first installment contemplated therein does not render the Debtor's allegations about the agreement implausible.

The same is true for the Defendants' pragmatic argument that it is inconceivable that they would agree to settle the debt owed under the original agreement for a reduced amount and release the lien—knowing that the Debtor planned to sell all its assets to Walgreens—for anything less than the full settlement amount. The Court should not and will not speculate, however, about why a party would or would not have acted in one manner or another. Rather, the Debtor, as the nonmoving party, is entitled to have all reasonable inferences drawn in its favor at the pleading stage. As such, the Court finds that the Debtor has stated a plausible claim for breach of contract against SBFS. Whether the evidence satisfies the elements of the claim will involve fact-intensive inquiries at a later date. The Motion to Dismiss will be denied as to Count I against SBFS.

### 2. *Count I will survive as to Rapid.*

The same reasons for denying dismissal of Count I against SBFS apply to Rapid. The Defendants' disagreements about the terms of the contract or the

parties' intentions do nothing but highlight evidentiary issues not properly resolved at the pleading stage.

As to the argument that the Debtor failed to plausibly allege that Rapid was a party to the amended agreement, the argument would have significant appeal under ordinary circumstances. Contrary to the Debtor's assertions, the fact that the letter memorializing the amended agreement was signed by a representative of Rapid stating that "we have agreed" and "we will release" the lien does not in and of itself make Rapid a party to the agreement. Use of the collective term "we" by an employee or agent of a corporation does not make such employee or agent liable for corporate debt. The Debtor cites no authority to suggest otherwise. The Debtor admitted that the original loan agreement was with SBFS only and that the payment at issue was made per instructions to SBFS. An agent's use of the term "we"—without more—when speaking or writing about a transaction is wholly insufficient to support a plausible claim of liability on the part of the agent or the other entities he represents.

As the Debtor points out, however, there is more to the story here. The Defendants previously admitted in their answer to the original complaint that they were both parties to the amended agreement with the Debtor. That is enough to push the claim from the realm of possibility to that of plausibility.

Although an amended complaint supersedes earlier complaints and operates as a clean slate for pleading purposes, it does not require a court to wholly ignore the substance of prior pleadings without regard to whether the superseding amendment changed the scope or nature of the case in a relevant

way. *See Burton v. Ghosh*, 961 F.3d 960, 962 (7th Cir. 2020) (clarifying the scope of *Massey v. Helman*, 196 F.3d 727 (7th Cir. 1999), and explaining that an amended complaint opens the door to newly raised affirmative defenses to the extent they relate to changes in the amended complaint).[2] Here, each iteration of the complaint has sought the same substantive relief based upon the same set of factual allegations. The Defendants' pivot to now dispute whether Rapid was a party to the agreement at issue was not prompted by a change in the nature, theory, or factual basis of the claims in the Second Amended Complaint. Further, taking the Defendants' prior admissions into account in declining to dismiss Count I simply defers consideration of factual disputes to a later date; neither Rapid nor SBFS will be bound by those admissions, and they will be free to deny the allegations in answering the Second Amended Complaint or a third amended complaint if filed. All that the Court is deciding at this juncture is that, because of Rapid's prior admission, it is plausible that Rapid was a party to the amended agreement. The Motion to Dismiss will therefore be denied as to Count I against Rapid.

---

[2] The Seventh Circuit and other courts have declined to accord relief based on prior admissions in superseded pleadings. *See Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1204-05 (7th Cir. 1998); *Wells Fargo Bank v. Worldwide Shrimp Co.*, 2019 WL 4189480, at *5 (N.D. Ill. Sept. 4, 2019). But those decisions involved using prior admissions to dismiss a cause of action rather than to deny such relief. They also predate the Seventh Circuit's *Burton* decision. More recently, courts have simply opted to follow the "usual practice" of deferring consideration of admissions to the summary judgment stage. *W.W. Grainger, Inc. v. Witz*, 2024 WL 1178529, at *1 (N.D. Ill. Jan. 12, 2024) (recognizing decisions declining to consider prior admissions but also that the law "remains unclear").

## B. Count II

Under Illinois law, a well-pleaded claim for promissory estoppel must allege facts to support that "(1) the defendant made an unambiguous promise to the plaintiff, (2) the plaintiff relied on such promise, (3) the plaintiff's reliance was expected and foreseeable by the defendant, and (4) the plaintiff relied on the promise to its detriment." *F.E. Moran, Inc. v. Johnson Controls, Inc.*, 697 F. Supp. 3d 786, 800 (N.D. Ill. 2023) (quoting *Matthews v. Chi. Transit Auth.*, 2016 IL 117638, ¶95).[3] The Defendants argue that the alleged promise here is ambiguous and that the Debtor could not have reasonably relied on any such promise because it was preceded by the Debtor's agreement with Walgreens. The Defendants also contend that the Debtor was not damaged because it received credit for the payment made and that they cannot be held liable for the lost proceeds from the failed Walgreens deal.

Dismissal of Count II is warranted as to both Defendants but not for the reasons argued in the Motion to Dismiss.

### 1. Count II will be dismissed without prejudice as to SBFS.

Count II explicitly relies on the existence of a contract; it begins by incorporating by reference all other allegations set forth in the Second Amended Complaint, including that there is a valid, binding agreement

---

[3] Without asserting which law controls, the Defendants also cite Maryland law similarly requiring "(1) a clear and definite promise; (2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee; (3) which does induce actual and reasonable action or forbearance by the promisee; and (4) causes a detriment which can only be avoided by the enforcement of the promise." *Kantsevoy*, 301 F. Supp. 3d at 600 (citing *Pavel Enters., Inc. v. A.S. Johnson Co.*, 342 Md. 143, 166 (1996)). Because, as will be discussed below, promissory estoppel is a theory which relies on the absence of an express contract, it is unlikely that the choice of law provision in the parties' express contract would control the choice of law on promissory estoppel.

between the parties, and is followed by a pointed allegation of a promise to release the UCC lien if the Debtor made "the first installment payment of $15,754.78 under the Amended Security Agreement[.]" Although the Debtor is not barred from asserting competing claims for relief, promissory estoppel has no application where the conduct at issue is the subject of an express contract between the parties. *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013); *US Dealer License, LLC v. US Dealer Licensing LLC*, 2019 WL 7049927, at *5 (N.D. Ill. Dec. 23, 2019). Promissory estoppel is not intended to give a party "a second bite at the apple in the event it fails to prove breach of contract." *Prentice v. UDC Advisory Servs., Inc.*. 271 Ill. App. 3d 505, 512 (1995) (citation omitted). A "[p]laintiff pleads himself out of court by alleging that his performance under the written contract is the same performance that would, in the absence of the contract, satisfy the requirement of detrimental reliance." *Matland v. Loyola Univ. of Chi.*, 2012 WL 5949067, at *3 (N.D. Ill. Nov. 27, 2012); *see also Prentice v. UDC Advisory Servs., Inc.*. 271 Ill. App. 3d at 511-16.

The Debtor's promissory estoppel claim is not pleaded as an alternative basis for relief, separate and distinct from its breach of contract claim; Count II is based on what the Debtor believes were the Defendants' obligations under the amended agreement. The claim therefore sounds in contract rather than equitable principles of promissory estoppel. The Motion to Dismiss largely focuses on disputes about contract interpretation without admitting or denying the existence of a controlling agreement. SBFS did previously acknowledge the existence of a binding, enforceable contract in answering the original

complaint, but that admission is not binding. SBFS could still deny the existence of an enforceable contract between itself and the Debtor in answering the Second Amended Complaint or a third amended complaint if filed, in which case the Debtor might seek to renew its claim for promissory estoppel. But the mere possibility of SBFS denying the existence of the express agreement that it has thus far acknowledged is not enough to avoid dismissal of the promissory estoppel claim. Count II will therefore be dismissed without prejudice as to SBFS.

### 2. *Count II will be dismissed without prejudice as to Rapid.*

The Motion to Dismiss argues that Rapid was not a party to the alleged amended agreement, which would seemingly open the door to a promissory estoppel claim against Rapid. But, to the extent Rapid could possibly be liable under a theory of promissory estoppel in its capacity as agent or principal of SBFS rather than as a party to the contract itself, the Second Amended Complaint fails to plausibly allege as much. "[I]t is not enough for a complaint to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief" through the allegations set forth. *Concentra Health Servs.*, 496 F.3d at 777 (citing *Twombly*, 550 U.S. at 561-63). Count II fails to actually suggest that, in the absence of an agreement between the parties, the Debtor has a right to relief under a theory of promissory estoppel. As such, Count II will also be dismissed without prejudice as to Rapid.

*C. Count III*

Count III seeks relief under §547(b) which permits the trustee or debtor in possession to avoid, with certain exceptions, transfers of property in which a debtor has an interest:

> (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made on or within 90 days before the date of the filing of the petition; and (5) that enables the creditor to receive more than such creditor would if the case were a case under Chapter 7, the transfer had not been made, and the creditor received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

*Pantazelos v. Benjamin (In re Pantazelos)*, 562 B.R. 723, 733 (Bankr. N.D. Ill. 2016); *see* 11 U.S.C. §547(b).

Other than the incorporation of all previously pleaded facts by reference, the factual allegations set forth in Count III merely identify all payments made by the Debtor to the "Creditors" under the original and amended loan agreements within 90 days of filing the petition, "which include the $15,754.78 payment above, as well as, 11 weekly payments of $1662.34 each, totaling $18,285.74[.]" Reciting the language of the statute, the Debtor asserts that those payments were preferential transfers and seeks judgment against both Defendants and an award of "damages" in an amount not less than $34,040.52.

*1. Count III will survive as to SBFS.*

The Motion to Dismiss argues that SBFS is a secured creditor not vulnerable to a preference action based on its UCC lien and the value of the

Debtor's assets at the time—as reflected by the agreed sale amount per the Walgreens deal relied upon by the Debtor throughout the Second Amended Complaint—which would have been sufficient to pay all secured claims.[4] The argument represents nothing more than a dispute about facts that are to be construed in the Debtor's favor at this stage. The value of the Debtor's assets subject to various liens at the time of payment in the context of a prospective sale closing with various contingencies is a fact-intensive determination necessarily reserved for a time after the parties have had an opportunity to gather and exchange evidence through discovery. The Motion to Dismiss will therefore be denied as to Count III against SBFS.

There is, however, another issue that demands attention. Count III alleges that all payments made on the original and amended agreements during the preference period are avoidable. But §547(c) provides a defense against preference avoidance to the extent a transfer "was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee," and was "made in the ordinary course of business or financial affairs of the debtor and the transferee" or "according to ordinary business terms[.]" 11 U.S.C. §547(c)(2). The introductory provision of §547(b) makes clear reference to the exceptions provided in subsection (c) and affirmatively requires the trustee or debtor in possession to "tak[e] into account a party's known or reasonably knowable affirmative defenses under subsection (c)" before bringing an action. 11 U.S.C. §547(b). By every indication, the "11

---

[4] In making this argument, the Defendants curiously ignore the fact that SBFS filed proofs of claim affirmatively characterizing the debt as an unsecured obligation.

weekly payments of $1662.34 each, totaling $18,285.74" were payments made under the original loan agreement—an obligation that predated the preference period—and are subject to an ordinary course defense. Because there is a plausible claim stated against SBFS at least as to the $15,754.78 payment under the amended agreement, the Court will not dismiss Count III outright. If the Debtor files a third amended complaint, however, it should seriously consider the wisdom of pursuing transfers that appear to be subject to an ordinary course defense; it has an obligation to do so.

### 2. *Count III will be dismissed without prejudice as to Rapid.*

Count III only asserts a cause of action under §547 which provides authority for avoiding a transfer. Liability on an avoided preferential transfer, however, is governed by §550, which provides for recovery of the transferred property or its value from "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. §550(a). Although the prayer for relief under Count III seeks a judgment of liability against the Defendants and recovery of amounts avoided, no reference is made to §550 or the elements thereof. That oversight is not fatal to the cause of action against SBFS because it can reasonably be inferred from the allegations of the Second Amended Complaint that SBFS could be liable. But the same does not go for Rapid.

The Second Amended Complaint lumps SBFS and Rapid together by asserting that the Debtor scheduled Rapid as a creditor and thereafter referring to the two collectively as "Creditors" to whom the Debtor made loan payments within 90 days of the petition. But that allegation is contradicted by the Debtor's allegations elsewhere in the complaint that the original agreement was with SBFS and that it complied with its obligations under the amended agreement which specifically directed that payment be made to SBFS. The Debtor was indebted to SBFS through the original loan agreement, and SBFS filed a proof of claim for that debt. The only reasonable inference to be drawn is that the payments in question were made to SBFS, on account of an antecedent debt owed to SBFS, and for the benefit of SBFS. Count III will therefore be dismissed as to Rapid. The dismissal will be without prejudice, but the Debtor is encouraged to seriously consider the realistic prospects of a positive outcome for the Debtor's bankruptcy estate in pursuing Rapid for a transfer that it apparently did not receive.

### D. Count IV

Count IV seeks to avoid the $15,754.78 payment made by the Debtor per the amended agreement as a constructively fraudulent transfer under §548(a)(1)(B) for which the Debtor received less than reasonably equivalent value in exchange.[5] The Motion to Dismiss argues that the Debtor received reasonably equivalent value for the transfer in the form of a "dollar-for-dollar

---

[5] The allegations of Count IV refer only to "equivalent value" rather than "reasonably equivalent value" as provided in the statute.

reduction in the loan balance," and, to the extent that the Debtor's claim is about additional value the Debtor expected or wanted in return for the payment, it fails to allege facts with enough specificity that would allow for a favorable inference to be drawn. In its response to the Motion to Dismiss, the Debtor does not dispute that it received a dollar-for-dollar reduction of its debt on account of the payment made but contends that the Defendants' argument ignores the fact that the real value expected by the Debtor in making the payment was receiving the lien release. The response goes on to lament the Defendants' alleged breach of contract and refusal to release the UCC lien that was part of the *quid pro quo.*

### 1. Count IV will be dismissed without prejudice as to SBFS.

Whether reasonably equivalent value was received in exchange for a transfer is an objective determination. *Peterson v. TTS Granite Inc. (In re Mack Indus., Ltd.),* 622 B.R. 887, 893-94 (Bankr. N.D. Ill. 2020). The Debtor's subjective opinions about the values of what it gave up or received in exchange do not control. *See Reinbold v. Morton Cmty. Bank (In re Mid-Illini Hardwoods, LLC),* 576 B.R. 598, 609 (Bankr. C.D. Ill. 2017). The test is simply one of comparing the value of what was transferred to what was received. *Barber v. Golden Seed Co.,* 129 F.3d 382, 387 (7th Cir. 1997). And dollar-for-dollar credit for payment on a debt is, on its face, reasonably equivalent value. *Mid-Illini Hardwoods*, 576 B.R. at 607 (citing *Freeland v. Enodis Corp.*, 540 F.3d 721,

735 (7th Cir. 2008)). The Debtor's admission that it received credit for its payments would therefore seem to bar relief under §548(a)(1)(B).

If facts exist from which a reasonable inference could be drawn to find a plausible claim notwithstanding the dollar-for-dollar exchange in value, such facts have not been alleged in sufficient detail in the Second Amended Complaint. Instead, the bare-bones allegations of Count IV seemingly conclude that allegations for breach of contract also suffice for the fraudulent transfer claim. Without more, the Debtor's constructively fraudulent transfer claim cannot survive. *See BIP Quadrant 4 Sys. Debt Fund, LLC v. Thondavadi (In re Quadrant 4 Sys. Corp.),* 624 B.R. 237, 242-43 (Bankr. N.D. Ill. 2020). Count IV will therefore be dismissed without prejudice as to SBFS.

### 2. Count IV will be dismissed without prejudice as to Rapid.

As to Rapid, Count IV suffers from the same flaws discussed under Count III. Liability for fraudulent transfers under §548, like preference avoidance under §547, is governed by §550. As explained above, the Debtor has not plausibly alleged that Rapid received payment from the Debtor. Rather, the only reasonable inference that can be drawn from the allegations of the Second Amended Complaint is that SBFS was the recipient of the transfer for purposes of liability under §550. But even assuming that Rapid was the recipient of the transfer at issue, the fact remains that the Debtor received a dollar-for-dollar reduction of its outstanding debt in exchange. For these reasons, Count IV will also be dismissed without prejudice as to Rapid.

*E. Count V*

Count V seeks equitable subordination under §510(c) of "any potential distribution to or lien of Creditors[.]" To that end, the Debtor merely alleges that "Creditors [sic] conduct in knowingly breaching their agreements as described [in the complaint] was inequitable conduct under 11 U.S.C. §510(c)." In arguing for dismissal of Count V, the Defendants cite cases discussing the heavy burden of proof needed to obtain such equitable relief and general reluctance among courts to grant relief in all but the most exceptional cases. *See, e.g.*, *In re Sentinel Mgmt. Group, Inc.,* 728 F.3d 660, 669-70 (7th Cir. 2013).

A claim for equitable subordination is comprised of three elements: "(1) that the party against whom subordination is sought have engaged in inequitable conduct, (2) that the conduct caused harm to other parties with claims, and (3) that the subordination does not contradict other policies of the Bankruptcy Code." *Official Comm. of Unsecured Creditors of SGK Ventures, LLC v. NewKey Group, LLC (In re SGK Ventures, LLC),* 521 B.R. 842, 862-63 (Bankr. N.D. Ill. 2014) (citing *United States v. Noland*, 517 U.S. 535, 538-39 (1996) and *In re Kreisler*, 546 F.3d 863, 866 (7th Cir. 2008)). As the Defendants point out, it is a highly subjective inquiry for which there is no clear guidance. *Sentinel Mgmt. Group*, 728 F.3d at 669.

*1. Count V will survive as to SBFS.*

Essentially relying on all prior allegations set forth in the Second Amended Complaint, Count V leaves much to be desired. Even so, the Court

can draw the inference that SBFS acted inequitably in relation to the amended agreement. On the whole, the Second Amended Complaint alleges that the Debtor owed SBFS a debt secured by a lien against its property and that the Debtor expressed the importance of obtaining a release of that lien in negotiating the amended agreement with SBFS. It would be reasonable to conclude that SBFS took advantage of the Debtor when the Debtor was in dire straits. And while the Debtor certainly faces a high burden of proving its entitlement to equitable relief, that is not a basis for dismissing Count V against SBFS. Rather, the highly subjective nature of such relief makes it difficult to resolve at the pleading stage. The Motion to Dismiss will therefore be denied as to Count V against SBFS.

*2. Count V will be dismissed without prejudice as to Rapid.*

Although the fact-intensive nature of equitable subordination can be enough to get through the pleading stage, the existence of a claim or lien to subordinate is a necessary precondition for relief under §510(c). And as discussed throughout this Opinion, it is SBFS rather than Rapid that is owed a debt, is the holder of the UCC lien, and filed a proof of claim in the Debtor's bankruptcy. Although the Debtor scheduled Rapid as a creditor in the bankruptcy, it described the claim as being disputed thereby placing the onus on Rapid to file a claim if it wanted to be treated as a creditor for purposes of plan voting and distribution. *See* Fed. R. Bankr. P. 3003(c)(2). Rapid, of course, did not file a proof of claim and therefore has no right, claim, or lien to

subordinate.[6] The Debtor's equitable subordination claim against Rapid thus cannot be maintained, and Count V will be dismissed without prejudice as to Rapid.

## IV.    Conclusion

Counts II and IV will be dismissed as to SBFS without prejudice. Counts II, III, IV, and V will be dismissed as to Rapid without prejudice. The dismissals without prejudice are based on this being the first time that a motion to dismiss has been heard in the proceeding; the Debtor should be given at least one opportunity to amend and to attempt to preserve some of the dismissed counts. Obviously, however, amending as to some counts would be ill-advised. Because Rapid does not have a claim on file, there is no basis to seek to subordinate its nonexistent claim. Likewise, if Rapid never received the $15,574.78 payment, there is no basis to seek to recover the transfer of that sum from it either as a preference or a fraudulent conveyance. Amending the promissory estoppel count may be more nuanced and, if undertaken, will require some serious work on the part of the Debtor and its attorney.

At least some of the Debtor's problems here appear to arise from its own confusion and lack of precision in identifying its creditors. Although it seems obvious that it received the original loan from SBFS, it never listed SBFS as a creditor in the bankruptcy case and largely failed to provide for SBFS in its confirmed plan. It makes no credible claim that SBFS is a name under which

---

[6] The fact that the Debtor's confirmed Chapter 11 plan provides for certain treatment of Rapid does not change matters.

Rapid did business but nevertheless used the d/b/a reference in its schedules and plan. Prior to any attempt to amend, the Debtor must work through the issues of what documents it signed, who it paid, and what evidence it has to make claims against each Defendant. Should the Debtor amend, the Defendants are likewise advised to thoroughly review the amended complaint and to carefully answer each allegation; the Defendants' joint answer to a prior complaint making no effort to distinguish between themselves did nothing to alleviate the confusion caused by the Debtor.

Finally, in deciding how to proceed, the Debtor should be ever mindful of whether the costs of pursuing its claims exceed or will exceed any likely benefit to the estate. Although not determinative of the outcome here, the issue of damages was raised by the Defendants and discussed by the Court at the hearing on the Motion to Dismiss. Under the Debtor's theory, the Defendants should be liable for the Debtor's expected proceeds of nearly $1.2 million from the failed Walgreens sale. The Defendants certainly were at least aware of the Walgreens deal, but they were not parties to the contract between the Debtor and Walgreens, and the Debtor apparently only set out to negotiate a lien release through an amended agreement with the Defendants on the eve of the Walgreens deal closing. In short, the prospect of recovering anything near the full value of the Walgreens contract is far from certain. Whether and what damages the Debtor will be able to prove, again, is an issue not appropriately resolved on the pleadings. But the Debtor needs to be vigilant in assessing the

likelihood of establishing not only the Defendants' liability on the claims but also the amount of damages with the required degree of evidence.

At this point, it appears the Debtor's greatest chance of success is in recovering the $15,754.78 payment under the amended agreement as an avoidable preference. That is not to say that the Debtor will succeed on that claim or that it will not be able to succeed on other claims for an even greater recovery. But as the costs of pursuing the claims grow, there may come a point where it is reasonably obvious that such costs exceed any probable benefit to the estate and the litigation can no longer be justified. *In re Taxman Clothing Co.,* 49 F.3d 310, 315 (7th Cir. 1995) (lawyer hired to do legal work for bankruptcy estate is fiduciary with a duty to maximize the value of the estate, including preservation of its assets). The costs of litigation here are already significant;[7] if those costs exceed the likely benefit to the estate that is to be derived, then they cannot be justified and disgorgement of amounts previously approved and paid to counsel may be necessary. Whether the case has reached that point is not the subject of this Opinion. It suffices to say, for now, that the Debtor's counsel has much to consider both in terms of the merits of the claims asserted against the Defendants and his duties to the bankruptcy estate.

---

[7] As of the date of this Opinion, before the pleadings have closed, Debtor's counsel in the adversary proceeding has already been awarded $13,351.64 in interim fees and costs with a second application for approval of an additional $12,380.38 in fees in costs pending in the bankruptcy case. In addition to the hourly fees charged and applied for, the terms of counsel's employment by the bankruptcy estate provide for a 13.33% contingency fee on any amounts recovered or generated for the estate.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

ENTERED: September 4, 2024

/s/ Mary P. Gorman

_____

UNITED STATES BANKRUPTCY JUDGE